# IN THE UNITED STATES DISTRICT COURT FOR THE
# WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| TABER LEBLANC, | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | NO. CIV-10-00503-HE |
| | ) | |
| THE TRAVELERS HOME AND | ) | |
| MARINE INSURANCE COMPANY, | ) | |
| | ) | |
| Defendant. | ) | |

## ORDER

Plaintiff Taber LeBlanc filed this action against The Travelers Home and Marine Insurance Company ("Travelers") asserting breach of contract and bad faith claims arising from a dispute over damage to plaintiff's house. Plaintiff, a professional homebuilder, constructed a home for his family around mid-2006 in Edmond, Oklahoma. Travelers issued a "High Value Homeowner's Policy" to plaintiff which was in force at the time of a February 10, 2009, tornado which passed through plaintiff's neighborhood. The tornado caused substantial damage to plaintiff's house, and Travelers—per the recommendations of its insurance adjuster, Scott Dau—made certain payments to plaintiff under the policy. Disputes eventually arose as to the scope and amount of the loss attributable to the tornado as well as other matters.

In July 2009, Travelers invoked the appraisal process under the policy as a means of resolving certain matters in dispute. The appraisal process resulted in an umpire being designated, who ultimately concluded the damage to plaintiff's house was attributable to the tornado and that the applicable loss was $1,614,052. The appraisal process did not resolve

the parties' differences, however, as defendant challenged the scope and nature of the umpire's award. Defendant tendered certain additional amounts (less than the umpire's award) to plaintiff after the umpire's determination. This suit followed.

The court previously addressed the parties' motions as to certain appraisal issues. *See* Order [Doc. #89]. The court concluded, in part, that the umpire exceeded the scope of his authority by resolving issues of causation in addition to determining the amount necessary to restore the house to its prior condition. Both parties have since filed motions for summary judgment. While other motions are also at issue,[1] this order addresses only the motions for summary judgment and the related motions to strike.

The standard for summary judgment is familiar. Summary judgment is appropriate only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). The court views the evidence and any reasonable inferences that might be drawn from it in the light most favorable to the nonmoving party. Swackhammer v. Sprint/United Mgmt. Co., 493 F.3d 1160, 1167 (10th Cir. 2007). Applying this standard, the court concludes plaintiff's motion should be denied and that defendant's motion should be granted in part and denied in part.

## DISCUSSION

---

[1] *See* Defendant's Motion to Exclude the Supplemental Reports and Opinions of Plaintiff's Experts [Doc. #118]; Defendant's Motion to Exclude Plaintiff's Claim for Replacement of the Home [Doc. #120]; Plaintiff's Motion in Limine or, in the alternative, Daubert Motion [Doc. #121]; Defendant's Motion to Exclude Opinions and Testimony of Plaintiff's Expert [Doc. #136]; Defendant's Motion to Supplement Final Witness and Exhibit List [Doc. #170].

2

Plaintiff's motion for summary judgment seeks both a determination that defendant breached the insurance contract in certain specific ways and that it breached the duty of good faith and fair dealing. Insofar as the contract claim is concerned, plaintiff seeks a determination that Travelers breached the insurance contract in various ways by particular actions it took in the course of adjusting plaintiff's claim. The court concludes, in light of the contract language as to when payment is due,[2] and the relatively minor nature of some or all of the referenced disputes in the context of the overall contract claim dispute,[3] that summary judgment is inappropriate as to plaintiff's contract claim. Further, as to the bad faith claim and as discussed more fully below, plaintiff's claim <u>barely</u> survives the defendant's summary judgment motion. Plaintiff does not come remotely close to establishing a basis for summary judgment in <u>his</u> favor on his bad faith claim, and his motion is, as to that claim, frivolous. Plaintiff's motion will be denied as to all claims.

Defendant's motion for summary judgment, which is directed to plaintiff's bad faith claim and his request for punitive damages, presents a considerably closer question. Plaintiff relies on a long list of claimed deficiencies in the handling of his claim, which he

---

[2]*The insurance policy provides that Travelers would pay their insured "60 days after we [Travelers] receive your proof of loss **and** . . . "[r]each an agreement with you." [Doc. #124-41] (emphasis added).*

[3]*The summary judgment rule permits, but does not require, the court to address individual facts that may be part of a broader issue or claim. See Fed.R.Civ.P. 56 (a) & (g). With respect to subsection (g), the 2009 comments note: "Even if the court believes that a fact is not genuinely in dispute, it may refrain from ordering that the fact be treated as established. The court may conclude that it is better to leave open for trial facts and issues that may be better illuminated by the trial of related facts that must be tried in any event."*

3

says add up to bad faith under Oklahoma law.

The tort of bad faith was first recognized by the Oklahoma Supreme Court in Christian v. American Home Assur. Co., 577 P.2d 899 (Okla. 1978).[4] It arises from the insurer's implied duty to deal fairly and act in good faith with its insured. Southern Hospitality, Inc. v. Zurich American Ins. Co., 393 F.3d 1137, 1142 (10th Cir. 2004). The duty is not breached if the insurer refuses to pay a claim or litigates a dispute with its insured if there is a legitimate dispute as to coverage or the amount of the claim. Otherwise put, "[t]he insurer will not be liable for the tort of bad faith if it 'had a good faith belief, at the time its performance was requested, that it had a justifiable reason for withholding payment under the policy.'" Oulds v. Principal Mut. Life Ins. Co., 6 F.3d 1431, 1436 (10th Cir. 1993) (quoting McCoy v. Oklahoma Farm Bureau Mut. Ins. Co., 841 P.2d 568, 572 (Okla. 1992)).

Under Oklahoma law, the minimum level of culpability necessary to establish bad faith liability against an insurer "is more than simple negligence, but less than the reckless conduct necessary to sanction a punitive damage award against [an] insurer." Badillo v. Mid Century Ins. Co., 121 P.3d 1080, 1094 (Okla. 2005). The question thus becomes whether plaintiff has produced evidence sufficient to create a justiciable question as to a basis for a bad faith finding. In other words, has he produced evidence sufficient to show some misconduct or mishandling of his claim that arises to something more than simple negligence. The court concludes that he has, though by the slimmest of margins.

---

[4]As this is a diversity action, the substantive law of Oklahoma applies.

4

As a threshold matter, the court notes the difficulty occasioned by the manner in which plaintiff has responded to defendant's motion. Rule 56 and the related local rule contemplate that a summary judgment motion will state the facts that a movant believes to be undisputed, as defendant has done here. The response must then begin with "a section which contains a concise statement of materials facts to which the party asserts genuine issues of fact exist," with additional requirements as stated in the rule. L.Cv.R. 56.1(c). What the rule does not contemplate, and what plaintiff has liberally done in his submissions, is to infuse most of his responses to defendant's proffered facts with substantial amounts of argument or partisan spin. He objects to certain facts "to the extent" that they implicate some argument he does not like. He also responds through (in addition to direct responses to the facts urged by defendant) a very lengthy and detailed list of "counter" facts, many of which have no obvious connection to any matter raised by defendant's submissions and many of which also include substantial argument rather than factual matters. The result is a huge mass of data, much of it stated in such argumentative terms that it cannot even be preliminarily evaluated without in-depth review of the original sources cited. In any event, while there is obviously a place for argument in a summary judgment brief, plaintiff's brief missed the mark as to its location. The result is a brief which, through a hyper-partisan presentation of factual matters, unnecessarily complicated the court's task. However, mindful of the standard that, at this stage, all inferences from the evidence are to be drawn in favor of the non-movant, the court simply notes the problem and addresses the merits

issues as best it can.[5]

Plaintiff relies on a lengthy list of claimed deficiencies in the conduct of defendant and its adjuster Scott Dau as the basis for his bad faith claim. Considered individually, none of them appear to rise to the status of the more-than-negligence standard contemplated by Oklahoma law. And considered collectively, they create a justiciable issue only by the thinnest of margins.

The central dispute in this case, at least in terms of potential impact on the size of any contract-based recovery by plaintiff, is the extent to which the damages to plaintiff's house were the result of the 2009 tornado or were the result of pre-existing structural problems such as with the basement support trusses. The parties' submissions make clear that there is a substantial issue in this regard. Given the existence of a legitimate dispute as to coverage and causation, the fact that defendant declined on this basis to pay the full damages sought by plaintiff does not support a bad faith claim. *See* Southern Hospitality, Inc., 393 F.3d at 1142 (Under Oklahoma law, "[i]f there is a legitimate dispute about coverage, an insurer's decision to refuse to pay a claim or to litigate a dispute is not a breach of the duty of good faith . . . ."). Moreover, there is nothing inherently improper in defendant's submission of certain issues to the appraisal process contemplated by the insurance contract. The dispute as to the scope of what was submitted to appraisal is itself a matter of legitimate dispute. *See* Order

---

[5]*Based on these and related issues, defendant moved to strike plaintiff's responses. [Doc. #156]. Predictably, plaintiff then moved to strike the defendant's motion to strike. [Doc. #158]. As exciting as the exercise might be, the court declines to explore further the intricacies of the parties' positions as to the adequacy of plaintiff's responses or the related efforts of defendant which arguably evade the page limits for briefs set by the local rules.*

[Doc. #89]. As a result, plaintiff's reliance on either the defendant's position as to causation generally, or to its position with respect to the appraisal process and/or its scope, are unpersuasive as a basis for a bad faith claim.

Plaintiff urges that the assignment of Dau to act as the adjuster on his claim is an indication of bad faith, citing Dau's lack of training in Oklahoma procedures and related legal concepts. It is clear that Dau was an adjustor with 20-plus years experience in the field, including some with high-end homeowner's policies such as plaintiff's. He was based in Texas, though licensed as an adjustor in Oklahoma since 2007. Plaintiff notes that Dau had no specific training in Oklahoma law but does not identify any aspect of Oklahoma law which appears to be both unique to Oklahoma and pertinent to an issue in this case.[6] The adjustor's lack of familiarity, when quizzed at his deposition, with legal concepts such as the "efficient proximate cause doctrine," "concurrent causation" and the like, strike the court as proving little or nothing as to the fitness of Dau, a non-lawyer, to perform the claims handling tasks assigned to him. The court finds nothing in the assignment of Dau to plaintiff's claim to be evidence of bad faith.

Plaintiff objects that Dau unreasonably relied on plaintiff or others to do the investigation of his claim. To the extent that plaintiff objects to Dau's reliance on "others," such as engineers or similar specialists, as part of his investigation, the objection is unpersuasive. It is clear that the central dispute in this case would require the expertise of

---

[6]*Dau expressed familiarity, based on general claims handling standards, with the principle that an insurance company and its agents must deal fairly and reasonably with their insured.*

engineers and others to assist in properly adjusting plaintiff's claim. An adjustor's reliance on such experts is to be expected and is likely essential. It does not suggest a basis for bad faith.

The evidence as to Dau's reliance on plaintiff in the investigation similarly does not suggest bad faith or other unreasonable conduct. There are no doubt circumstances in which it would be unreasonable for an adjustor to rely on its insured for involved investigations or for complex determinations of damages. But such circumstances are not suggested by the evidence here. This plaintiff, Mr. LeBlanc, was a somewhat unique insured. He not only owned the house that is the subject of this dispute, but he also built it. He was the general contractor as to the house and had substantial experience with various subcontractors who had participated in its building or otherwise worked in the area.[7] In these circumstances, the evidence does not suggest unreasonable conduct by defendant in relying on plaintiff for various aspects of the investigation. Indeed, it suggests the treatment of the plaintiff was in some respects more deferential than would have been the norm. For example, Dau invited plaintiff to select an engineer to do the initial analysis of the house, rather than waiting for an engineer selected by defendant. In any event, the court concludes plaintiff's submissions do not suggest a basis for bad faith based on defendant's alleged over-reliance on plaintiff or others in making its investigation.[8]

---

[7]*Mr. LeBlanc was apparently also formerly employed by an insurance company and had experience as an insurance adjuster. [Doc. #124-20].*

[8]*Plaintiff's related argument—that defendant did not do an adequate investigation of the truss issue prior to the appraisal process—is similarly unpersuasive. The undisputed evidence is*

Plaintiff argues defendant acted improperly in issuing a payment check that was tied to a release of claims, arguably contrary to Oklahoma law. He further argues that defendant delayed in issuing a replacement check. The court is unpersuaded. The evidence indicates the check tendered by defendant lacked the sort of "release" language that is proscribed by Oklahoma law. Further, there is no indication of a request for re-issuance of the check with different language until substantially later in the case.

Plaintiff argues that the amount tendered to plaintiff after completion of the appraisal process was an impermissible "low ball" offer because the reserve established by defendant for plaintiff's claim far exceeded the amount of the check. He relies on evidence that defendant increased its reserve after the appraisal award was issued. Internal reserves established by an insurance company are an estimate of potential liability in connection with a claim. They do not represent the insurer's judgment as to what a plaintiff should recover. *See generally*, Signature Dev. Cos. v. Royal Ins. Co. Of Am., 230 F.3d 1215, 1224 (10th Cir. 2000) (Reserve calculations are "merely an amount [the insurer] set aside to cover potential future liabilities."). As such, and particularly given the post-appraisal timing of the reserve determination involved here, the evidence as to the difference between defendant's reserve for this claim and its payments on the claim does not support an inference of bad faith.

Plaintiff also relies on various "mistakes" made by Dau in the course of handling the

---

*that the parties initially went forward with an engineering firm selected by plaintiff, that the repairs to the trusses and/or basement support were made as suggested by that engineer, and that, for at least some period of time, the parties thought any issue as to the trusses had been resolved.*

9

claim.[9] In plaintiff's view, the mistakes add up to approximately $60,000 in adjustments or additional payments made over the course of the handling of the claim, with a significant portion of the payments coming after filing of this suit and various developments in it. In most storm-damage cases , "mistakes" totaling $60,000 in the handling of a claim would be a strong indicator of something more than ordinary negligence. Here, that inference is not so obvious. This case involves a very expensive home. The homeowner's policy in issue had property coverage on the dwelling of $1,937,000. *See* Doc. #125-2.[10] The policy included a number of coverages and provisions unique to high-end homes which resulted, in light of the types of damage involved here, in an adjustment process of considerably more complexity than might be expected in a "routine" storm claim. Some of the mistakes were *di minimus* in the circumstances existing here or appear to be the sort of "moving target" adjustments as might occur with any complex claim.[11] Most were immediately corrected after they were identified.[12] Considered individually, each of the mistakes appear to be nothing more than negligent mistakes which, as noted above, are not a basis for a bad faith

---

[9]*Plaintiff suggests that certain of the mistakes "rise to the level of outright misrepresentations," see Doc. #146, p. 23, but the court sees nothing in the evidence cited by plaintiff to suggest any intentional misrepresentation.*

[10]*The policy also included other property coverages ($193,000 for "other structures"; $1,452,750 for personal property; $968,500 for loss of use).*

[11]*Plaintiff is now claiming far more in contract damages than were even hinted at by him or the engineers at the outset of the claims process.*

[12]*In some cases, it appears the mistakes were not brought to the attention of Dau and defendant until Dau was confronted with them at his deposition.*

claim under Oklahoma law. *See* <u>Nat'l Mut. Cas. Co. v. Britt</u>, 218 P.2d 1039, 1042 (Okla. 1950) ("It takes something more than mere mistake to constitute bad faith.") (citation omitted); <u>Bailey v. Farmers Ins. Co., Inc.</u>, 137 P.3d 1260, 1264 (Okla. Civ. App. 2006) ("Insurers are free to make legitimate business decisions (and mistakes) regarding payment, as long as they act reasonably and deal fairly and in good faith with their insureds."). The court concludes, however, that the cumulative effect of evidence as to all the "mistakes" as to this insurance claim, including their number and total dollar value, are sufficient to create a justiciable issue as to bad faith. As noted above, at this stage a court must draw the factual inferences in favor of the non-moving party, here the plaintiff. Doing so, and giving plaintiff the benefit of the uncertainty in Oklahoma law as to where the line is drawn between simple negligence and something more, the court concludes plaintiff has presented evidence sufficient to preclude summary judgment on his bad faith claim.

Punitive damages is another matter. As noted above, Oklahoma law recognizes that the showing necessary for punitive damages is higher than that for making out a bad faith claim as a substantive matter. *See* <u>Badillo</u>, 121 P.3d at 1094. To warrant submission of a request for punitive damages to a jury in these circumstances, plaintiff must present evidence "of conduct rising to the level of reckless disregard or malice on the part of [Travelers]." <u>Id.</u> at 1105. The Oklahoma Supreme Court "has recognized that the availability of punitive damages in a case by an insured against his/her insurer for breach of the implied duty of good faith and fair dealing is not automatic, but rather is governed by the standard applicable in other tort cases." <u>Id.</u> at 1106. Submission of the issue of punitive damages to a jury may be

11

improper, even where there is evidence to support recovery of actual damages. Id. Further, under Oklahoma law, the basis for punitive damages must be shown by clear and convincing evidence. Id. at 1105 (citing 23 Okla. Stat. § 9.1).[13] Here, as discussed above, the evidence is barely sufficient to survive summary judgment on the substantive bad faith claim. For the reasons indicated, the court concludes plaintiff has not produced evidence sufficient to create a justiciable issue as to a request for punitive damages. Defendant's motion will therefore be granted as to the punitive damages issue.

## SUMMARY

For the reasons stated, plaintiff's motion for partial summary judgment [Doc. Nos. 125 & 137] is **DENIED**. Defendant's motion for summary judgment [Doc. #123] is **DENIED** insofar as it seeks judgment as to plaintiff's bad faith claim but is **GRANTED** as to the availability of punitive damages. The parties' motions to strike [Doc. Nos. 156 & 158] are **DENIED**.

Still at issue are motions raising Daubert concerns, issues as to supplementation of reports and opinions, issues as to the extent of plaintiff's requested recovery, and defendant's request to supplement lists. Those will be dealt with in due course, likely on a short fuse basis, if the case is not resolved at the settlement conference scheduled for **July 14, 2011**.

---

[13]*The quantum of proof necessary to establish a particular issue may properly be considered on summary judgment. See* Anderson v. Liberty Lobby, Inc., *477 U.S. 242, 254-5 (1986).*

**IT IS SO ORDERED**.

Dated this 13th day of July, 2011.

_____
JOE HEATON
UNITED STATES DISTRICT JUDGE